UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DARIUS RICE                                                    PLAINTIFF

VS.                               CIVIL ACTION NO. 3:22-cv-397-TSL-RPM

HAMILTONDAVIS MENTAL HEALTH, INC.                             DEFENDANTS
AND MARIE HAMILTON-ABSTON

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendants HamiltonDavis Mental Health, Inc. and Marie Hamilton-Abston to vacate default judgment pursuant to Fed. R. Civ. P. 55(c) and Rule 60(b) of the Federal Rules of Civil Procedure.  Plaintiff Darius Rice has responded in opposition to the motion, and the court, having considered the memoranda of authorities, together with the record in this case, concludes that the motion should be granted in part and denied in part.

On July 13, 2022, Rice filed his complaint against his former employer, HamiltonDavis Mental Health, Inc. (HamiltonDavis), and his supervisor, Marie Hamilton-Abston, president of HamiltonDavis. Rice alleges that during his employment as marketing community outreach director, Hamilton-Abston engaged in various acts of unwanted sexual behavior toward Rice, which continued unabated even after Rice complained to HamiltonDavis' co-owner, Essie Florence.  Rice charges that after he complained to Florence,

1

Hamiton-Abston began a social media campaign against him, falsely accusing him of extorting her and lying about her conduct toward him.  Ultimately, Rice was terminated, ostensibly for alleged acts of insubordination.  Based on these allegations, Rice has asserted claims against HamiltonDavis under Title VII, 42 U.S.C. § 2000e et seq., for (1) hostile work environment; (2) quid-pro-quo harassment and discrimination and (3) retaliation.  In addition, he asserts state law claims against Hamilton-Abston for defamation and intentional infliction of emotional distress.

Rice filed his complaint in this cause on July 13, 2022 and requested issuance of summons for defendants on July 14.  On August 11, counsel sent to each defendant a request for waiver of service, pursuant to Rule 4(d)(1); the waiver forms were not returned.  After receiving an extension of time to serve process, Rice served HamiltonDavis on October 11 and Hamilton-Abston on October 19.  Defendants' answers were due November 2 and November 10, respectively.  Neither defendant filed an answer, and on November 30, 2022, plaintiff moved for a clerk's entry of default pursuant to Rule 55(a).  The motion was granted and default was entered on December 1.  On January 26, 2023, plaintiff moved for a default judgment on liability and requested a hearing on damages.

The court granted his motion by order entered February 1, 2023, and scheduled a hearing on damages for March 2, 2023, at 9:00 a.m.

At 8:10 a.m. on March 2, 2023, as the court and plaintiff's counsel were preparing to begin the damages hearing, defendants filed the present motion to set aside default judgment. After hearing briefly from counsel for both parties (defense counsel having filed a motion for entry of appearance contemporaneously with the motion to set aside default), the court continued the hearing, granted plaintiff's ore tenus motion for expedited discovery on issues related to the default, and granted plaintiff an extension of time to respond to defendants' motion. Briefing on the motion is now complete.

Rule 55(c) states, "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." In this case, the court has so far entered a default judgment only as to liability; the issue of damages remains outstanding. Accordingly, Rule 60(b) is inapplicable, and the court's analysis will instead proceed under the "good cause" standard of Rule 55(c). See Hinson v. Webster Industries, 240 F.R.D. 687, 692 (M.D. Ala. 2007) (concluding that Rule 55(c)'s good cause standard governs determination of whether

to set aside default judgment on issue of liability).[1]  In
determining whether good cause exists, the court considers the
following factors: "whether the defendant willfully defaulted,
whether a meritorious defense is presented, and whether setting
aside the default judgment would prejudice the plaintiff."  A.P.

---

[1]    The Tenth Circuit recently wrote that "Rule 55(c)'s good-
cause standard has no apparent role in considering a motion to set
aside a non-final default judgment; nor do Rule 60(b)'s
standards."  Schauff v. Tripathi, No. 22-2066, 2023 WL 3362061, at
*3 (10th Cir. May 11, 2023).  The court determined that a default
judgment as to liability only, a nonfinal judgment, is governed,
not by 60(b) or 55(c), but by Rule 54(b), under which an order
that "does not end the action as to any of the claims or parties
... may be revised at any time before the entry of a judgment
adjudicating all the claims and all the parties' rights and
liabilities."  The court must respectfully disagree.  An entry of
default "prevents the defaulting party from entering any
appearance or defense in an action without further court order."
Lamarr v. Chase Home Finance, LLC, Civil Action No. 1:07CV141-SA-
JAD, 2008 WL 4057208, at *1 (N.D. Miss. Aug. 26, 2008).  To secure
such court order, the party must demonstrate "good cause" under
Rule 55(c).  See id. (finding that "after default was entered by
the clerk, Lamarr should not have filed her Answer until she
sought leave of court or until she sought relief from the clerk's
entry of default, i.e., filed a motion to set aside entry of
default pursuant to Federal Rule of Civil Procedure 55(c).").  In
the court's view, a defendant seeking relief from a nonfinal
default judgment – which can be entered only after default has
been entered - cannot secure relief on a lesser showing than the
"good cause" required for relief from the entry of default.

<u>Moller - Maersk A/S v. Safewater Lines (I) Pvt., Ltd.</u>, 784 F. App'x 221, 225 (5th Cir. 2019).  "Of these factors, two can be determinative: a district court may refuse to set aside a default judgment if it finds either that the default was willful or that the defendant failed to present a meritorious defense."  <u>Id.</u> "Other factors may also be considered, including whether 'the defendant acted expeditiously to correct the default.'"  <u>Lacy v. Sitel Corp.</u>, 227 F.3d 290, 292 (5th Cir. 2000) (quoting <u>Dierschke v. O'Cheskey (In re Dierschke)</u>, 975 F.2d 181, 184 (5th Cir. 1992)).  A finding of willful default ends the inquiry, for "when the court finds an intentional failure of responsive pleadings there need be no other finding."

"The willfulness factor [under Rule 55(c)] is reviewed under the excusable neglect standard of Federal Rule of Civil Procedure 60(b)."  <u>Id.</u>  The record herein reflects that Hamilton-Abston first spoke with defense attorney Lisa Ross on September 14 about this lawsuit.  Subsequently, on October 14, after being served with process, defendants contacted Ross to inform her they had been served with process and retained Ross as their counsel.  A week later, defendants paid Ross a $5,000 retainer, which she deposited on October 24.

On December 2, one day after the clerk's entry of default, Ross contacted Essie Florence and informed Florence that she had failed to file an answer to the complaint.  Ross asked Florence to determine how many employees HamiltonDavis had employed in 2021; Davis sent the company's Form 941s to Ross a week later, via e-mail.  On February 14, two and a half months after Ross became aware of the entry of default and two weeks after the default judgment as to liability was entered, Ross, according to defendants, "contacted Marie Hamilton-Davis to inform her that she was still trying to find a case from the Fifth Circuit to support her request to set aside the default judgment."

In support of their motion, defendants argue that the failure to timely answer the complaint "was caused by [defense] counsel's failure to docket and calendar the matter."[2]  At the hearing, Ross stated by way of explanation that "[t]his case file got mixed up with another case that [she] was working on before [she] docketed the case or entered an appearance."  The court would like to accept at face value counsel's explanation for her failure to timely answer the complaint, but finds it difficult to do so,

_____

[2]    Defendants, despite having taken ample time to prepare their motion, presented no proof in support of their motion, such as sworn affidavits from defendants or their counsel.  The court has before it only an unsworn assertion by counsel that a docketing/calendaring omission led to her failure to file an answer.

given that (1) counsel had spoken with defendants in September and was aware that they were anticipating that a lawsuit would soon be filed; (2) she was retained to represent defendants just over two weeks before an answer was due; (3) she contacted defendants about payment of her retainer and received a check in partial payment of her retainer just ten days before the answer was due, and deposited that check into her account just one week before the answer was due; and (4) several weeks passed from the time the answer was due and the time default was actually entered.  Counsel knew when she was retained that her clients had been served; and while she may have a busy law practice, it should have been a simple matter for her to remember, even without reference to a calendar, that the date for filing an answer was fast approaching. She knew this, and yet it appears she did not even ask her clients for the information she needed to file an answer until after default had been entered.

Defense counsel has admitted that she became aware of the entry of default within a day of default having been entered on December 1; and it is undisputed that she communicated to defendants on December 2 that she had failed to file an answer and that default had been entered.[3]  Yet inexplicably (and

_____

3    Counsel has not explained how she learned of the clerk's

inexcusably), counsel, knowing her clients were in default, failed to take action to seek relief from the entry of default.  No explanation has been offered for her inaction.  Defendants themselves likewise knew they were in default and yet apparently made no effort to determine whether counsel had moved for relief from the default.  Even after the default judgment on liability was entered – and again, counsel knew right away that this had occurred – she immediately communicated with her clients but not with the court and not with plaintiff's counsel.  Instead, she waited until moments before the damages hearing to file the present motion for relief from default judgment.  Defendants have no explanation for their inaction.

The court recognizes that calendaring errors are generally found sufficient to establish excusable neglect.  See Evanston Ins. Co. v. Washington Cnty. Country Club, LLC, No. 4:16-CV-144-DMB-JMV, 2017 WL 4293162, at *2 (N.D. Miss. Sept. 27, 2017). Here, however, considering all the circumstances, the court is

---

entry of default.  When asked at the hearing how she had learned that the default judgment had been entered and a hearing had been set on damages, she stated that around February 14, she checked the docket after she found the file in her office.  She stated that she then "had to try to pull together the defenses and pull together a response."  She did not disclose at the hearing that she had already been aware of the entry of default.  That revelation was made in responses to post-hearing discovery propounded by plaintiff.

8

unable to find counsel's neglect in failing to timely file an answer was excusable, particularly when considered in light of her failure to promptly seek relief after default was entered.  The court thus finds that the failure to timely answer, and to thereafter fail to answer before the court entered default, was willful.  See Jenkens & Gilchrist v. Groia & Co., 542 F.3d 114, 123 (5th Cir. 2008) (stating that "the defendant's knowledge of the perfected service, and the defendant's actions post-service . . . play a role in measuring the willfulness of a defendant's default").  That default was solely the fault of counsel, and not of defendants themselves.  On the other hand, the failure to act with reasonable dispatch to address the default once entered was not solely a failure of counsel; the defendants themselves had a role, albeit a subordinate one, in thereafter allowing the default judgment to be entered.

As to the second consideration, the standard for demonstrating a meritorious defense is lenient.  See DirecTV, Inc. v. Leidigh, No. 1:04CV54, 2005 WL 8170125, at *2 (S.D. Miss. July 7, 2005) (citing Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1969)), in which the court wrote, "We nevertheless would be quickly persuaded to give Stutts relief if ... he had given the District Court even a hint of a suggestion that he had a

meritorious defense").  In determining whether a meritorious defense exists, the underlying concern is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default."  <u>Evanston Ins. Co. v. Washington Cnty. Country Club, LLC</u>, 2017 WL 4293162, at *2 (N.D.Miss., 2017); <u>In re OCA, Inc.</u>, 551 F.3d 359, 373 (5th Cir. 2008) (citations and quotation marks omitted).  The meritorious defense factor "weighs in favor of setting aside a default when the defendant 'provide[s] definite factual allegations with supporting record evidence that, if believed at trial, would lead to a result contrary to that achieved by the default.'"  <u>Id</u>. (quoting <u>Jenkens</u>, 542 F.3d at 122).

Under this standard, HamiltonDavis has asserted meritorious defenses to the claims alleged against it, namely, that (1) it is not an "employer" under Title VII because it did not have the requisite number of employees during the relevant time period, <u>see</u> 42 U.S.C. § 2000e(b) (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...."); and (2) it had legitimate, nondiscriminatory reasons for plaintiff's termination.

Defendants also claim that Hamilton-Abston has meritorious defenses to the claims against her. As to plaintiff's defamation claim, they argue that there "is a question" whether Rice filed this lawsuit within one year of the alleged defamatory Instagram post. In fact, however, there is no question that the claim was timely filed. The statute of limitation on a defamation claim in Mississippi is one year. See Miss. Code. Ann. § 15-1-35 ("[A]ll actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after."). This lawsuit clearly was filed within one year of the allegedly defamatory post. Defendants further argue that even if this claim was timely filed, plaintiff has not shown that he suffered any harm as a result of the post. The court has entered default judgment only as to liability. Even if the default were to refuse to set aside the default judgment, damages would not be awarded if plaintiff were to fail to prove he suffered harm.

Defendants also assert that Hamilton-Abston has meritorious defenses to plaintiff's intentional infliction of emotional distress claim. First, while they acknowledge that under Mississippi law, an intentional infliction of emotional distress claim can proceed based on sexual harassment in the workplace,

they argue that since HamiltonDavis was not an "employer" under
Title VII, it follows that Rice's intentional infliction of
emotional distress claim cannot as a matter of law be premised on
his sexual harassment "as that term is defined in Title VII."
However, it is not a prerequisite to the viability of a state law
claim of intentional infliction of emotional distress premised on
acts of sexual harassment that the alleged harassment be
actionable under Title VII.

Defendants further assert that "the defendants did not engage
in any outrageous conduct toward Rice."  In addition to
plaintiff's allegations that Hamilton-Abston regularly made sexual
comments/advances toward him and threatened him with termination
if he refused to have sex with her, plaintiff alleges two
instances of sexual assault.  On one occasion, Hamilton-Abston
entered his office, locked the door, began sexually touching him
without his consent, tried to persuade him to have sex with her,
ignored his protests and stopped only when he called out for help.
On another occasion, she booked both of them into the same hotel
room on a business trip and while in the room, stripped off her
clothes, pressed him into the corner of the room and tried to get
him to have sex with her.  Plaintiff also alleges that after he
and his girlfriend sent flowers to Hamilton-Abston following the

death of her mother, she vandalized his office, including pouring water onto his computer.  He alleges that she ultimately terminated his employment for refusing to engage in a sexual relationship with her.  Plaintiff argues in response that Hamilton-Abston's simple declaration that her conduct was not "outrageous" for intentional infliction of emotional distress purposes - without even attempting to dispute the facts of what she did as stated in the complaint – is not a meritorious defense. He maintains that the conduct alleged is, in fact, considered extreme and outrageous for purposes of intentional infliction of emotional distress under Mississippi law.  The court agrees.  "'A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes.'"  Seibert v. Jackson Cnty., Miss., 851 F.3d 430, 437–38 (5th Cir. 2017) (quoting Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So. 2d 845, 851 (Miss. 2001)).  "Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.'"  Id. (quoting Lee, 797 So. 2d at 851 (quoting Pegues v. Emerson Elec. Co., 913 F. Supp. 976, 982–83 (N.D. Miss. 1996)).  See also Harris v. Maximus, Inc., Civ. Action No. 2:20-CV-38-KS-MTP, 2020 WL 3980205, at *3

13

(S.D. Miss. July 14, 2020) (observing that "cases where workplace conduct was severe enough to constitute intentional infliction of emotional distress have involved sustained racial or sexual harassment, as opposed to mere 'unfair employment decisions.'"). The conduct alleged in the complaint involved sustained sexual harassment, including physical sexual assault.  Defendants have not suggested any basis, factual or legal, for concluding that the alleged conduct was not, in fact, intentional and outrageous, so as to constitute intentional infliction of emotional distress.  It follows from the foregoing that Hamilton-Abston, unlike HamlitonDavis, has not presented a meritorious defense.[4]

Turning to the third factor, the only prejudice plaintiff has identified is prejudice from delay in collecting a judgment.  In this regard, plaintiff submits that with the passage of time, HamiltonDavis is becoming less viable financially.  He submits that the longer it takes to secure a judgment, the less likely it is he will recover on the judgment.  He states, "Delay is not just delay in this case.  It likely means the difference between collecting something and nothing."  The Fifth Circuit has held

---

[4]    Defendants have proffered what is, in substance, judicial estoppel as a meritorious defense based on plaintiff's alleged failure to disclose this cause of action in his pending bankruptcy proceeding.  For reasons set out in plaintiff's response, there is no arguable merit to defendants' position on this issue.

that "mere delay does not alone constitute prejudice," and that
"'the plaintiff must show that the delay will result in the loss
of evidence, increased difficulties in discovery, or greater
opportunities for fraud and collusion.'" Lacy, 227 F.3d at 293
(quoting Berthelsen v. Kane, 907 F.2d 617, 621 (6th Cir. 1990)).
Even assuming the ability to collect on a judgment would
constitute prejudice, here, plaintiff's actions herein belie his
assertion that delay is prejudicial.  To the point, after securing
an entry of default, plaintiff waited nearly two months to move
for a default judgment.  The court, in fact, was on the verge of
entering a show cause order when plaintiff filed his motion for
default judgment.  These circumstances undercut his assertion of
prejudice from delay.

Considering the lack of prejudice to plaintiff, along with
the fact that the event of default – defendants' failure to answer
– was attributable to counsel, and not to defendants, and further
considering that HamiltonDavis has presented meritorious defenses,
the court concludes that the default judgment as to HamiltonDavis
should be set aside.[5]  However, the court finds that plaintiff's
reasonable attorney's fees and costs incurred in securing the

---

[5]   Defendants are not necessarily absolved of responsibility
merely because the default was attributable to counsel.  See Razvi
v. Dallas Fort Worth Int'l Airport, No. 21-10016, 2022 WL 4298141,

entry of default and default judgment and in defending the default judgment against the motion to set aside should be borne by defense counsel.

The court's calculus as to Hamilton-Abston is different, however.  Unlike the company, Hamilton-Abston has not demonstrated that she has a meritorious defense to plaintiff's claims against her personally.  The court, therefore, concludes that the motion to set aside the default judgment as to Hamilton-Abston should be denied, with damages to be determined following a hearing at a date and time to be determined.

Based on the foregoing, it is ordered that the motion to set aside default judgment as to HamiltonDavis is granted but is denied as to Hamilton-Abston.  It is further ordered that defense counsel shall pay plaintiff's reasonable attorney's fees and costs for obtaining and defending the default judgment.  Plaintiff shall have fourteen days to submit an itemization of fees and expenses, and HamiltonDavis shall have seven days to file any objection.

SO ORDERED this 31st day of May, 2023.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

at *3 (5th Cir. Sept. 16, 2022).  This is, however, a factor the court may properly consider.

16